IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

KIMBERLY GIPSON,

    PLAINTIFF,

v.

WASTE CONNECTIONS
OF TENNESSEE, INC.,

    DEFENDANT.

Case No.
**JURY DEMANDED**

## VERIFIED COMPLAINT FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**COMES NOW** Plaintiff Kimberly Gipson (hereinafter "Plaintiff" or "Ms. Gipson"), by and through undersigned counsel, and files this Complaint against Defendant Waste Connections of Tennessee (hereinafter "WCTN" or "Defendant") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and in support states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant based on sex discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2. Plaintiff is a former employee of Defendant who alleges that Defendant discriminated against her on the basis of her sex, subjected her to a hostile work environment in the form of sex-based harassment, and unlawfully retaliated against Ms. Gipson for engaging in protected activity.

3. Defendant's actions are in direct violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

4. Plaintiff seeks money damages as permitted by applicable law; attorneys' fees, costs, and expenses incurred in this action.

## PARTIES

5. Plaintiff, Ms. Kimberly Gipson, is an adult resident of Memphis, Shelby County, Tennessee.

6. Defendant Waste Connections of Tennessee, Inc. is a for-profit corporation organized under the laws of Delaware. Its principal office is located at 3 Waterway Square Pl Ste 110, The Woodlands, TX 77380.

7. Defendant may be served with process through its registered agent, Corporation Service Company, at 2908 Poston Avenue, Nashville, TN 37203.

## JURISDICTION AND VENUE

8. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1311 because this case is brought under Title VII, 42 U.S.C. § 2000e *et seq.* and Section 1981 of the Civil Rights Act of 1866.

9. Defendant is registered and subject to service of process in Tennessee, employees Tennessee citizens, maintains an office, and does business in the state of Tennessee. Therefore, this Court has personal jurisdiction over Defendant.

10. Venue for this action is proper in this Court and County pursuant to 28 U.S.C. § 1391. The facts and circumstances which give rise to the causes of action contained within this Complaint occurred in Shelby County, Tennessee, and within this Judicial District.

## FACTUAL ALLEGATIONS

11. Ms. Gipson was hired by WCTN on or about May 30, 2022 as an Operations Administrator.

12. Initially, Ms. Gipson worked at the Company's location at 1680 Quad County Lane in Memphis, Tennessee.

13. Ms. Gipson's responsibilities included onboarding employees, assisting with employee benefits, uniforms, and ensuring that drivers were in compliance with the relevant agencies.

14. In September 2023, the Company moved Ms. Gipson to WCTN's administrative office under then-District Manager Bobby Ladley.

15. After Zay Louis's tenure as District Manager began, Ms. Gipson requested to move back to the Quad County Lane location in order to have better communication and have easier access to the Company's drivers.

16. Mr. Louis agreed, and Ms. Gipson relocated in February 2024.

17. Ms. Gipson planned to move into her old office, which was available; however, Cornelius Finley, Assistant District Manager, moved Ms. Gipson to an adjacent office.

18. On March 4, 2024, Ms. Gipson went to the restroom, and when she returned to her office she noticed that the smart table in her office was gone.

19. After inquiring about the table, she overheard Mr. Louis shouting from downstairs that he had the table because he needed it for another location and that he would replace it.

20. Afterwards, Ms. Gipson heard him tell two employees to take the table to the truck. Ms. Gipson realized that she left some items in the table so she yelled out to Mr. Louis about the items.

21. Mr. Louis then told the employees that she left her "prophylactics" in the drawer.

22. Ms. Gipson overheard these comments and questioned Mr. Louis about them. Mr. Louis was surprised that Ms. Gipson had heard the comments and dismissed the comments as a joke.

23. This incident greatly offended Ms. Gipson and completely changed her view of Mr. Louis.

24. On May 24, 2024, Ms. Gipson first contacted David Parrish, Director of Human Resources.

25. On May 28, 2024, Ms. Gipson and Mr. Parrish spoke, whereby Ms. Gipson reported the sexually inappropriate comments and behavior by Mr. Louis.

26. Soon after her complaints to Mr. Parrish, Ms. Gipson noticed that the Company began to take away her duties, such as recording attendance of drivers.

27. On June 20, 2024, the Company notified Ms. Gipson that they would be moving her to the "administrative area," which was a noisy trailer, even though her position as Operations Administrator required a quiet, professional space for training and orientation. This move disrupted her work, made it harder to perform her duties.

28. From July through her termination in November 2024, Ms. Gipson was increasingly isolated and retaliated against by Mr. Louis, his assistant Trey Hudson, and others.

29. Such retaliatory behavior included the following: excluding Ms. Gipson from workplace communications, lunches, and meetings. ignoring her while openly engaging with other employees, assigning her menial or inconvenient tasks outside her job duties, undermining her role by removing responsibilities (such as boot voucher administration) and attempting to train others to replace her, conducting meetings and loud conversations directly in front of her desk, disrupting her ability to work, and creating an atmosphere of intimidation where coworkers whispered, made jokes, or went silent when she entered.

30. On November 7, 2024, Ms. Gipson was abruptly terminated.

31. Ms. Gipson was accused, without any evidence, of asking employees to monitor coworkers' time, an allegation she had no authority to carry out and that was inconsistent with her role.

32. Defendant did not allow Ms. Gipson to confront her accusers, and the decision was made without any progressive discipline, despite her excellent work record.

33. In comparison, Defendant allowed male employees such as Mr. Louis and Mr. Hudson to act in a blatantly discriminatory, retaliatory, and harassing manner towards Ms. Gipson without discipline or any repercussions.

34. In addition, Defendant did not discipline Mr. DeVonte Hurt, a male driver for Defendant, after he purposefully disregarded the company's employee handbook, throwing it in the trash in front of Ms. Gipson.

## COUNT I – SEX DISCRIMINATION IN VIOLATION OF TITLE VII

35. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-34 as if they were fully set forth herein.

36. Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex. . . ." 42 U.S.C. § 2000e-2(a)(1).

37. In order to establish a *prima facie* case of sex discrimination under Title VII, Plaintiff must demonstrate "(1) that [she] is a member of a protected class, (2) that [she] was subject to an adverse employment decision, (3) that [she] was qualified for the position, and (4) that [she] was treated differently than a similarly situated individual outside the protected class." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006).

38. Here, Ms. Gipson is a member of a protected class as a woman.

39. On November 7, 2024, Defendant terminated Ms. Gipson; therefore, she suffered an adverse employment action.

40. Ms. Gipson was qualified for her position, as evidenced by her excellent work record throughout her employment with WCTN.

41. Defendant terminated Ms. Gipson after accusing her, without evidence, of asking employees

to monitor coworkers' time; in comparison, Defendant allowed similarly situated male employees to harass and act in a discriminatory and retaliatory manner towards Ms. Gipson without any sort of equal discipline; moreover, Defendant allowed similarly situated male employees to openly disregard company policies without discipline.

42. As such, Defendant discriminated against Ms. Gipson on the basis of her sex, in violation of Title VII.

### COUNT II - SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

43. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-42 as if they were fully set forth herein.

44. In order to establish a prima facie case of hostile environment sexual harassment, the plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with her work performance and an intimidating, hostile, or offensive working environment that affected seriously her psychological well-being; and (5) the existence of respondeat superior liability. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 619-20 (6th Cir.1986); *Sconce v. Tandy Corp.*, 9 F. Supp.2d 773, 776 n. 5 (W.D.Ky.1998); *See also Williams v. General Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir.1999).

45. Here, Ms. Gipson is a member of the protected class as a woman.

46. Ms. Gipson received unwelcome harassment based on her sex through Mr. Louis's comments regarding her "prophylactics."

47. Given the sexual nature of such comments and that they were made by Defendant's District Manager, such behavior by Mr. Louis unreasonably interfered with her ability work in a

safe working environment.

48. The conduct was severe and pervasive as Mr. Louis stated this to multiple employees, creating an unfair and untrue reputation of Ms. Gipson as an employee of the Company.

49. In addition, the behavior is clearly offensive as it insinuated that Ms. Gipson engaged in inappropriate sexual behavior in or around the workplace.

50. Respondeat superior liability exists here due to Mr. Louis, the District Manager, making his comments regarding Ms. Gipson within the scope of his employment.

51. As such, Defendant subject Ms. Gipson to unlawful sexual harassment in violation of Title VII.

## COUNT III - UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII

52. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-51 as if fully set forth herein.

53. To establish a prima facie claim of Title VII retaliation, Plaintiff must show: (1) that she engaged in a protected activity, (2) her exercise of such protected activity was known by Defendant, (3) thereafter, Defendant took an action that was materially adverse to her, and (4) a causal connection existed between the protected activity and the materially adverse action. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468-69 (6th Cir. 2012).

54. Here, Ms. Gipson engaged in protected activity when she reported Mr. Louis's sexually inappropriate comments to Mr. Parrish.

55. Soon after her complaints to Mr. Parrish, the Company began to take away her duties, such as recording attendance of drivers.

56. In addition, the Company moved her from her office to a noisy trailer, even though her position as Operations Administrator required a quiet, professional space for training and orientation.

7

57. From July through her termination in November 2024, Ms. Gipson was increasingly isolated and retaliated against by Mr. Louis, his assistant Trey Hudson, and others.

58. Such retaliatory behavior included the following: excluding Ms. Gipson from workplace communications, lunches, and meetings. ignoring her while openly engaging with other employees, assigning her menial or inconvenient tasks outside her job duties, undermining her role by removing responsibilities (such as boot voucher administration) and attempting to train others to replace her, conducting meetings and loud conversations directly in front of her desk, disrupting her ability to work, and creating an atmosphere of intimidation where coworkers whispered, made jokes, or went silent when she entered.

59. Finally, on November 7, 2024, Ms. Gipson was abruptly terminated.

60. Given Ms. Gipson's prior excellent work record, the adverse actions only taking place after her complaints, and that Defendant terminated Ms. Gipson off of accusations with no corroborating evidence, a causal connection xists between Ms. Gipson's complaints and her eventual termination.

61. As such, Defendant unlawfully retaliated against Ms. Gipson for engaging in protected activity in violation of Title VII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kimberly Gipson prays for relief as follows:

A. Declare that the acts and practices complained of herein are in violation of Title VII;

B. Order Defendant to make Plaintiff whole by providing appropriate back pay and front pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

C. Order Defendant to make Plaintiff whole by providing compensation for past and future

pecuniary losses resulting from the unlawful employment practices described herein, in amounts to be determined at trial;

E. Order Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F. Order Defendant to pay Plaintiff punitive damages for its malicious and reckless conduct described herein, in amounts to be determined at trial;

G. Award Plaintiff her reasonable attorney's fees and costs of this action; and,

H. Grant such further relief as the Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY TO TRY ALL ISSUES SO TRIABLE**

Dated: March 2, 2026

Respectfully Submitted,

s/ Alan G. Crone
Alan G. Crone, TN Bar No. 014285
W. Patrick Crone, TN Bar No. 039578
BARRETT & FARAHANY
88 Union Avenue, 4th Floor
Memphis, TN 38103
901-737-7740 (voice)
acrone@justiceatwork.com
pcrone@justiceatwork.com

*Attorneys for Plaintiff*

## DECLARATION & VERIFICATION

I, Kimberly Gipson, verify and declare that the facts stated in the foregoing Verified Complaint for violations of Title VII are true to the best of my knowledge and belief, and that the Complaint was not made out of levity or by collusion with Defendant but in sincerity and truth for the causes mentioned in the Complaint.

*Kimberly Gipson (Mar 2, 2026 10:36:50 CST)*

**Kimberly Gipson**

03/02/2026

Date

# K. Gipson Complaint DRAFT 02.27.2026 4901-8362-6898 v.3-MAC edits 4896-9963-9955 v.1

Final Audit Report                                                      2026-03-02

| | |
|---|---|
| Created: | 2026-03-02 |
| By: | Maggie Crone (mcrone@justiceatwork.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAiDPK6LvG9yajxW4hc6TVsZ7-UQE-94q4 |

## "K. Gipson Complaint DRAFT 02.27.2026 4901-8362-6898 v.3-MAC edits 4896-9963-9955 v.1" History

- Document created by Maggie Crone (mcrone@justiceatwork.com)
  2026-03-02 - 3:44:26 PM GMT

- Document emailed to kgipson1536@gmail.com for signature
  2026-03-02 - 3:51:03 PM GMT

- Email viewed by kgipson1536@gmail.com
  2026-03-02 - 4:35:07 PM GMT

- Signer kgipson1536@gmail.com entered name at signing as Kimberly Gipson
  2026-03-02 - 4:36:48 PM GMT

- Document e-signed by Kimberly Gipson (kgipson1536@gmail.com)
  Signature Date: 2026-03-02 - 4:36:50 PM GMT - Time Source: server

- Agreement completed.
  2026-03-02 - 4:36:50 PM GMT

BARRETT Farnham | Powered by Adobe Acrobat Sign